IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BOBBY PACHINO ENOS,<br><br>Defendant. | CRIM. NO. 19-00028 JMS-1<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE, ECF NO. 74 |

**ORDER DENYING DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE, ECF NO. 74**

**I. INTRODUCTION**

Before the court is pro se Defendant Bobby Pachino Enos' ("Defendant") Motion for Compassionate Release ("Motion"). ECF No. 74. Defendant requests compassionate release or a reduced sentence based on (1) COVID-related asthma and conditions of confinement, and (2) a sentencing disparity based on proposed amendments to the Sentencing Guidelines that would reduce his criminal history category. The court finds that Defendant has failed to show extraordinary and compelling reasons warranting release or a reduced sentence. Moreover, the court's analysis of the 18 U.S.C. § 3553(a) factors warrants continued incarceration. Accordingly, for the reasons stated below, Defendant's Motion, ECF No. 74, is DENIED.

## II. BACKGROUND

Defendant is 46-years old and incarcerated at FCI Sheridan with a projected release date of October 30, 2025. *See* Find an inmate ("Find By Number" entering "11217-122"), https://www.bop.gov/inmateloc/ (last visited July 10, 2023). On July 30, 2019, Defendant pleaded guilty to one count of possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii). ECF Nos. 35, 68.

On March 24, 2021, the court sentenced Defendant to 70 months' imprisonment, five years' supervised release, and a $100 special assessment. ECF No. 68.[1] On April 14, 2023, the court received Defendant's Motion. ECF No. 74. The government filed a response on May 9, 2023. ECF No. 76. Although Defendant was given the option to file a Reply, he failed to do so. *See* ECF No. 75 (setting deadlines). The court decides the Motion without a hearing pursuant to Local Rule 7.1(c).

## III. DISCUSSION

### A. Legal Standard

Ordinarily, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Wright*, 46 F.4th 938, 944 (9th Cir.

---

[1] Defendant had a guideline offense level 29, criminal history category III, resulting in an advisory guideline range of 120 to 135 months. ECF No. 69 at PageID.285. Based on a motion filed by the government, the court varied downward to 70 months' imprisonment.

2

2022) (quoting *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021), and 18 U.S.C. § 3582(c)). Congress created a limited exception for modifying the sentence of a federal inmate who files a motion for "compassionate release" satisfying the substantive and procedural requirements of 18 U.S.C. § 3582(c)(1)(A). *See id.* Section 3582(c)(1)(A), as amended by the First Step Act of 2018 ("FSA"), provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

"As compassionate release derogates from the principle of finality, it is a 'narrow' remedy . . . and the court's disposition of a compassionate release motion 'is discretionary, not mandatory[.]'" *Wright*, 46 F.4th at 944–45 (internal citations omitted). And although the court must consider "extraordinary and

compelling" reasons, the applicable policy statements by the Sentencing Commission, and § 3553(a) factors, it may deny compassionate release on any of these bases:

> First, the district court must determine whether "extraordinary and compelling reasons warrant" a sentence reduction. Second, the court must evaluate whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." Third, the court must consider and weigh the factors set forth in 18 U.S.C. § 3553(a) to decide whether the requested sentence reduction is warranted "under the particular circumstances of the case." Although a district court must conclude that a defendant satisfies all three predicates before granting a motion for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of these grounds.

*Wright*, 46 F.4th at 945 (internal citations and footnote omitted).

Although § 3582(c)(1)(A) requires a sentence reduction to be "consistent with applicable policy statements issued by the [United States] Sentencing Commission," that requirement does not apply to this case, as there is currently no policy statement from the Sentencing Commission that is "applicable" to compassionate release motions filed by a defendant rather than by the BOP Director. *See Wright*, 46 F.4th at 946. Specifically, the Sentencing Commission's policy statement, Guideline § 1B1.13, was promulgated before the FSA provided criminal defendants the ability to file motions for compassionate release on their own behalf. *See United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021) (per

curiam).  The Sentencing Guidelines have not yet been amended post-FSA.[2]  This court is thus empowered to consider any extraordinary and compelling reason that warrants a sentence reduction.  *See id.* at 801–02.  In making this determination, "[t]he Sentencing Commission's statements in [§ 1B1.13] may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* at 802.

The Ninth Circuit in *Keller*, after *Aruda*, further clarified the scope of the district court's discretion, holding that a district court may deny a compassionate release motion solely based on defendant's failure to show an "extraordinary and compelling" reason for release.  "[A] district court that properly *denies* compassionate release need not evaluate each step" in the "sequential step-by-step analysis" required by 18 U.S.C. § 3582(c)(1)(A).  *Keller*, 2 F.4th at 1284.  "Such a reading is compelled by the structure of the compassionate release statute, which treats its requirements as conjunctive." *Wright*, 46 F.4th at 947 (citing

---

[2] On April 5, 2023, the Sentencing Commission promulgated preliminary Amendments that address defendant-filed motions under § 3582(c)(1)(A).  *See* United States Sentencing Commission News Release ("News Release") https://www.ussc.gov/about/news/press-releases/april-5-2023 (last visited July 10, 2023); *see also* Amendments to the Sentencing Guidelines (Preliminary), https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20230405_prelim-RF.pdf (last visited July 10, 2023).  The amendments will become effective November 1, 2023, unless Congress rejects them.
   Further, to the extent Defendant asserts that the "new sentencing guidelines voted in by the sentencing commission on April 5, 2023," should reduce his criminal history score resulting in a criminal category II, ECF No. 74 at PageID.314, this argument is unavailing.  The "status point" argument to which Defendant refers is not presently effective, let alone given retroactive effect under the Guidelines.  *See* U.S.S.G. § 1B1.10.  In short, anticipated amendments of the Guidelines do not qualify as extraordinary and compelling reasons.

*Keller*, 2 F.4th at 1284). "This structure necessarily dictates that a court may deny compassionate release at *any* stage of the § 3582(c)(1)(A) pipeline." *Id*. (emphasis added).

**B.     Exhaustion of Administrative Remedies**

To satisfy § 3582(c)(1)(A)'s exhaustion requirement, a defendant must submit a request to the BOP (often, the prison warden) that explains the basis for the relief sought and provides a proposed release plan. *See* 28 C.F.R. § 571.61(a)(1)–(2); *see also United States v. Gorion*, 2023 WL 121468, at *3 (D. Haw. Jan. 6, 2023) (citations omitted). The exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A) is "a mandatory claim-processing rule that must be enforced when properly invoked." *Keller*, 2 F.4th at 1282. In other words, if raised by the government in opposition to a motion for compassionate release, the exhaustion requirement must be enforced, but if the government does not raise the exhaustion requirement, it may be waived.

Defendant has sufficiently shown that he administratively exhausted his request for compassionate release based upon his asthma and breathing problems. He attached to his Motion a copy of an "Inmate Request to Staff" dated March 4, 2023, which requested the warden to provide compassionate release based upon his asthma and breathing problems. *See* ECF No. 74-1. According to

Defendant, the warden did not respond to this request. ECF No. 74 at PageID.313.[3]

## C.  Extraordinary and Compelling Reasons Do Not Warrant Release

Defendant bears the burden of establishing extraordinary and compelling reasons warranting compassionate release. *See Wright*, 46 F.4th at 951; *United States v. Bogema*, 2020 WL 6150467, at *3 (D. Haw. Oct. 20, 2020). He has failed to do so. *Wright*, 46 F.4th at 947.

Defendant has not provided any medical documentation to support the severity of asthma and ongoing symptoms of "long term Covid." ECF No. 74 at PageID.313. The Centers for Disease Control ("CDC") state that those with chronic lung diseases—such as "moderate to severe" asthma—"can make you more likely to get very sick from COVID-19," *see* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 10, 2023). But BOP medical records from July 2022 suggest that Defendant's asthma is being managed and is not as severe as he claims:

> [Defendant] reports his "asthma" condition was
> diagnosed as a child and is under very good control with
> no night cough, asymptomatic during various intense

---

[3] Although the government argues that "the U.S. Bureau of Prisons has no record of receiving [Defendant's] request," ECF No. 76 at PageID.320, it provides no actual evidence of a failure to exhaust to rebut Defendant's submission of a copy of a form. Thus, the court assumes that Defendant submitted the Inmate Request to Staff form as he claims.

> cardio workouts, and rare use of Albuterol MDI "every
> few months." He describes excellent exercise tolerance
> and not [sic] limitations due to "asthma."

ECF No. 77-1 at PageID.332. And as recently as April 2023, Defendant was prescribed an Albuterol inhaler to be used "as needed." ECF No. 77-2 at PageID.333. In addition, the BOP medical records do not reflect complaints about difficulty breathing. And although Defendant does not specify or provide documentation of the multiple times he purportedly contracted COVID-19, as of August 2022, he has received the one-dose Janssen vaccine and does not suffer from "Cough, Shortness of Breath, Fatigue, Body aches, Sore throat, Diarrhea, Headache, Loss of taste or smell, Nausea or Vomiting." ECF No. 77-3 at PageID.334. Based on the record provided to the court, it appears that Defendant does not suffer from "Long COVID," which consists of "a wide range of new, returning, or ongoing health problems that people experience after being infected with the virus that causes COVID-19." *See* About Long COVID, https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects/index.html (last visited July 10, 2023).[4] The CDC also advises that older adults over the age of 50, "with

---

[4] According to the CDC, "[p]eople who experience Long COVID most commonly report" various symptoms, such as: fatigue that interferes with daily life; "post-exertional malaise"; fever; difficulty breathing or shortness of breath; cough; chest pain; heart palpitations; "brain fog"; headache; sleep problems; lightheadedness; pins-and-needles feelings; change in smell or taste; depression or anxiety; diarrhea; stomach, joint, or muscle pain, or rash. *See* Symptoms, https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects/index.html (last visited July 10, 2023).

risk increasing with older age"), are more likely than younger people to get very sick if they get COVID-19.  *See* Factors That Affect Your Risk of Getting Very Sick from COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/your-health/risks-getting-very-sick.html (last visited July 10, 2023).

Moreover, the present impact of COVID-19 on individuals in federal custody at FCI Sheridan as of July 2023 is not as dire a picture as Defendant paints.  Of 1,571 inmates, 895 are fully inoculated, with zero open cases, and two COVID-related deaths.  *See* Inmate COVID-19 Data, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited July 10, 2023).  Given these statistics, the BOP's ability to manage Defendant's asthma, his age—as of this Order, 46-years old—and no medical documentation confirming that he suffers from Long COVID, the court finds that Defendant has failed to satisfy his burden to show that an extraordinary and compelling reason justifies compassionate release.

D.     **Section 3553(a) Factors**

In any event, the court independently denies Defendant's Motion based on a consideration of the applicable 18 U.S.C. § 3553(a) factors.  Those factors include, but are not limited to: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; and (2) "the need for the sentence imposed . . . (A) to reflect the seriousness of the offense, to promote

9

respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1)–(2). And, under the parsimony clause, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2). 18 U.S.C. § 3553(a).

In October 2018, federal agents recovered from Defendant's vehicle a Sears Winchester 20-gauge short-barreled shotgun loaded with five rounds of 20 caliber ammunition and 105 grams of methamphetamine with a 99.4% purity level. ECF No. 58 at PageID.185. Further, Defendant committed the instant offense while under parole for a State of Hawaii conviction of place to keep pistol or revolver. *Id*. at PageID.191–92. In short, Defendant illegally possessed methamphetamine and a sawed-off shotgun while under supervision for the illegal possession of a firearm.

In sum, considering all the § 3553(a) factors, any reduction of Defendant's sentence of 70 months would severely undermine the goals of sentencing set forth in § 3553(a)(2). The court therefore DENIES Defendant's motion on the § 3553(a) factors alone.

## IV. **CONCLUSION**

For the reasons stated, Defendant's Motion for Compassionate Release, ECF No. 74, is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 10, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States v. Enos*, Cr. No. 19-00028 JMS-1, Order Denying Defendant's Motion for Compassionate Release, ECF No. 74